### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| v. | : | NO. 19-688 |
| | : | |
| **CHARLES SALLEY** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                                    **January 27, 2022**

      The grand jury indicted Charles Salley for threatening violence to intimidate a witness in an ongoing criminal trial of a business colleague and knowingly possessing a firearm as a felon on November 26, 2019. Mr. Salley remained incarcerated pending trial. Pandemic mitigation protocols required he remain in pretrial detention until we could safely summon jurors for his trial. He moved for pretrial release several times. We denied his request twice. We granted his third motion for pretrial release considering Mr. Salley's rapidly worsening health conditions amid the COVID-19 pandemic on November 30, 2020. We required home confinement. Mr. Salley then plead guilty to witness tampering and the United States dismissed the charge for possessing a firearm as a felon. Mr. Salley agreed to the sentencing ranges set by the Sentencing Commission. He expressed sincere remorse and understood the unlawfulness of his conduct. We sentenced Mr. Salley consistent with his consent to ninety months imprisonment with credit for time served and ordered he self-surrender to the custody of the Bureau of Prisons on September 30, 2021. We recommended the Bureau of Prisons place Mr. Salley in a federal medical center facility for his caretaking given his illnesses. The Bureau did so. Mr. Salley appeared at the Federal Medical Center Devens on September 30, 2021. He immediately came

under the care of the medical providers in the federal medical center and an outside specialist. He also immediately asked the warden to release him due to his health conditions. Six weeks after entering the federal medical center and after exhausting his internal remedies, Mr. Salley moved for emergency compassionate release. The medical records produced this week confirm his ongoing care as well as his apparent inability or refusal to follow his providers' direction to further his health.

After review of his pro se and counseled arguments, medical records current through this week, the United States' Opposition, and supporting letters, we find extraordinary and compelling reasons based on his medical conditions but deny release in his first months of his sentence as not consistent with Congress's sentencing purposes.

## I.     Background

Mr. Salley's serious medical conditions are largely repeated from his pretrial motions.[1] We detailed his medical history in our November 30, 2020 Memorandum granting his third motion for pretrial release.[2]  We found in November 2020 Mr. Salley suffered from hypertension, hyperlipidemia (high cholesterol), asthma, history of heart attack and strokes, renal disease, history of a kidney transplant for which he took various immunosuppressant medications, Type 2 diabetes mellitus, and elevated creatine levels requiring hospitalization.[3] He had recently received news his body began rejecting his kidney transplant.[4]  He also had recently tested positive for COVID-19.[5] Mr. Salley spent two weeks in the intensive care unit due to his COVID-19 diagnosis immediately after his release from pretrial detention.[6]

At the time of sentencing the probation office apprised us of Mr. Salley's medical history. We learned Mr. Salley spent time in the intensive care unit following his COVID-19 diagnosis and began to have seizures between our Memorandum granting him pretrial release and his

sentencing. We considered Mr. Salley's physical condition and medical history when imposing his sentence. We recommended Mr. Salley be designated to a medical facility such as Federal Medical Center Butner in North Carolina.[7] The Bureau of Prisons placed Mr. Salley at Federal Medical Center Devens in Massachusetts.[8] FMC Devens is "[a]n administrative security federal medical center."[9] The Health Services Department at FMC Devens has outpatient and inpatient services and provides on-site care seven days a week.[10]

### *Recent developments with Mr. Salley's health.*

Both Mr. Salley and the United States provide us with Mr. Salley's recent medical records.[11] Mr. Salley receives treatment from providers at FMC Devens and an outside specialist, Dr. Aditya Pawar, MD with Beth Israel Deaconess Medical Center, for his kidneys.[12]

Mr. Salley received a health screen and history and physical upon surrendering to the custody of the Bureau of Prisons.[13] Physician Assistant Makowicz and Dr. Khazen report his medical conditions as: end stage renal disease (listed as ESRD)[14], post-transplant course "complicated by acute rejection", heart attack (listed as NSTEMI),[15] high blood pressure/hypertension (listed as HTN),[16] hyperlipidemia, prior stroke (listed as CVA) with no residual defects,[17] and diabetes.[18] Mr. Salley denied having seizures at both his screening and history and physical despite his prior history.[19] Mr. Salley sought treatment for seizures multiple times in November 2021 and the medical staff note his actual history of seizures is unclear.[20] Mr. Salley has anemia and is monitored by the facility's "pharmacy run anemia clinic."[21] Mr. Salley's diabetes is uncontrolled.[22] His providers previously noted Mr. Salley "[h]as been mostly compliant with insulin doses" but has poor diet compliance "evidenced on commissary list."[23] His most recent medical records reflect the opposite.[24] Physician Assistant Makowicz recently documented Mr. Salley "is a no show at AM insulin line, and often refuses sliding scale

3

insulin doses. He has also missed several doses of evening glargine over the past month."[25] But Physician Assistant Makowicz reports his "HgbA1c" level has improved.[26] Mr. Salley's medication non-compliance seems to have also impacted his high blood pressure and kidney disease.[27] Physician Assistant Makowicz notes Mr. Salley "is in the process of being screened as a potential renal transplant candidate, though his medication compliance may limit his candidacy for repeat transplant. He has missed 6 doses of tacrolimus despite reporting understanding of how important this medication is for his transplant."[28] Physician Assistant Makowicz further reports Mr. Salley "was very fixated on his medications being on pill line . . . Per his PCPT, his medications were made pill line due to concerns about non-compliance as patient presented with persistent dangerously elevated blood pressure. Blood pressure improved once medications were placed on pill line, with hypertensive episodes only occurring when patient did not attend morning pill line. [Mr. Salley] was educated at length about the importance of taking his medications as prescribed to prevent further progression of his CKD and to prevent adverse events related to uncontrolled diabetes and hypertension."[29]

Mr. Salley's creatinine levels are rising.[30] His BMI is most recently noted as 28.3.[31] Mr. Salley is being reconsidered for another kidney transplant.[32] His records indicate Mr. Salley is interested in the transplant, and his providers at FMC Devens are beginning to perform tests for the kidney transplant screening.[33]

Mr. Salley provides conflicting reports of his vaccination status. He reports he is vaccinated with two doses of the Pfizer vaccine to prison medical staff but swears to us he "has been advised to not receive the vaccination."[34] He refused further vaccination on November 30, 2021.[35] His fiancé reports Mr. Salley tested positive for COVID-19 again earlier this week.[36] Mr. Salley's providers at FMC Devens confirm he tested positive for COVID-19 on January 24,

2022.[37]   They also now report he is unvaccinated and high risk "due to [being] immunocompromised and unvaccinated."[38]   The notes reflect the facility intercepted Mr. Salley's communication to someone indicating he has "severe" COVID-19 symptoms, but Mr. Salley reported to the facility he has no symptoms and "feels well."[39]   He is presently in isolation and Physician Assistant Makowicz ordered his oxygen level and temperature be taken twice daily while in isolation.[40]

### *FMC Devens COVID-19 measures and containment.*

FMC Devens has eight hundred fifty-six inmates.[41]   As of January 27, 2022, there are twenty-three confirmed positive inmate cases and seventeen staff for COVID-19.[42]   There have been thirteen inmate deaths at the facility.[43]   Three hundred and fifty-six inmates and one hundred twenty-nine staff have recovered from the virus.[44]   FMC Devens is operating under "Level 3" operations to contain the spread of COVID-19.[45]

## II.   Analysis

Mr. Salley immediately sought release based on compassionate release upon surrendering.   He then moved for compassionate release six weeks into his ninety-month sentence based on the COVID-19 pandemic and his underlying medical conditions as well as his conditions of confinement.[46]   He also contends he should be released to protect his pregnant fiancé.[47]   We appointed counsel to represent Mr. Salley, and his counsel argues Mr. Salley should be released because of his medical conditions and the COVID-19 pandemic.[48]   He argues Mr. Salley is healthier outside of the facility than inside.[49]   The United States opposes release arguing no extraordinary and compelling circumstances even with Mr. Salley's medical conditions and COVID-19.[50]   Mr. Salley's fiancé also submitted three letters supporting his motion for compassionate release.[51]

Congress allows us to grant compassionate release if Mr. Salley: (1) "fully exhaust[s] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier;"[52] (2) shows "extraordinary and compelling reasons warrant" a reduction; and (3) shows "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."[53] Our Court of Appeals instructs policy statements are "not binding," but "shed[] light on the meaning of extraordinary and compelling reasons."[54] We also must "consider[] the factors set forth in section 3553(a) to the extent that they are applicable."[55] Mr. Salley "bears the burden of proving that extraordinary and compelling reasons exist."[56]

### A. Mr. Salley's serious health conditions and the COVID-19 pandemic constitute extraordinary and compelling circumstances.[57]

Mr. Salley seeks compassionate release because of his "serious medical issues . . . which place him at a heightened risk for severe illness or death if he were to contract COVID-19 for a second time."[58] He also challenges his conditions of confinement arguing they violate the Eighth Amendment and warrant release.[59] He finally argues in his pro se reply he needs to care for his fiancé and unborn child.[60] Mr. Salley's counsel argues the COVID-19 pandemic disproportionally affects incarcerated people and Mr. Salley's health conditions constitute extraordinary and compelling reasons, both alone and in light of the continuing pandemic.[61] The United States counters Mr. Salley does not present extraordinary and compelling reasons in light of the COVID-19 pandemic and his medical conditions.[62] We disagree with the United States as to Mr. Salley's extraordinary and compelling reasons for sentence modification.

It is well settled "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."[63]

6

But we may consider the existence of the continued spread of the COVID-19 virus and its variants, such as Omicron, in deciding whether there are extraordinary and compelling reasons for release.[64] Our Court of Appeals also instructs we may consider the Sentencing Guidelines' policy statement to define the undefined, "amorphous phrase" "extraordinary and compelling reasons."[65] But the statement is not binding.[66]

Mr. Salley meets the extraordinary and compelling reasons prong considering his serious medical conditions in light of the continuing Winter 2022 spread of the COVID-19 pandemic. Mr. Salley's medical conditions are serious and extensive. He has end-stage renal disease;[67] chronic kidney disease stage 4; hypertension; uncontrolled diabetes; hyperlipidemia; anemia; acute rejection of his kidney transplant requiring another transplant; and, a history of heart attacks, strokes, drug use, and possibly seizures. Mr. Salley has at least seven of the conditions the Center for Disease Control reports cause severe illness in people of any age.[68] Mr. Salley previously contracted COVID-19 and spent two weeks in an intensive care unit. Mr. Salley recently contracted the virus again but presently reports he is asymptomatic.

It is unclear if he is vaccinated based on his conflicting medical records and statements to us.[69] But his recent medical records report he is unvaccinated. A decision to not vaccinate may cut against a finding of extraordinary and compelling reasons to modify his sentence.[70] And his recent medical records indicate Mr. Salley has been non-compliant with his medications which is exacerbating his medical conditions, including his diabetes, hypertension, and kidney disease. This non-compliance also cuts against finding extraordinary and compelling reasons.[71]

But on the record before us and considering the Sentencing Commission's policy statement, we find Mr. Salley's medical conditions, especially his end-stage renal disease, considering the COVID-19 pandemic constitute extraordinary and compelling reasons for a

7

modification of his sentence.[72] But this is not the end of our analysis. We must also analyze Congress's sentencing purposes under section 3553(a) factors.

### B. Congress's section 3553 factors counsel against release.

Mr. Salley argues he understands the seriousness of his offense, we did not sentence him to "life nor death[] but the conditions of his confinement knocks at the doors of his life," and his incarceration to date "is sufficiently punitive to address his criminal behavior."[73] Mr. Salley's counsel argues the time served (both pretrial and post-sentence) to date is sufficient to meet the objectives of sentencing, Mr. Salley has a stable job and home to be released to, he will volunteer to promote the law and deter others from committing the same offenses, and he is unlikely to reoffend.[74] He requests Mr. Salley be placed on home confinement and then requests we reduce his sentence to time served.[75] The United States counters Mr. Salley is a danger to the community, his crime occurred only two years ago, and he has only served less than twenty months of a ninety month sentence, thus releasing him would not "protect the community, reflect the seriousness of the offense, promote respect for the law, or provide just punishment for the offense."[76] We agree with the United States.

Congress allows us to reduce a sentence "after considering the factors set forth in section 3553(a) to the extent that they are applicable."[77] We "should assess whether those factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence."[78]

Mr. Salley plead guilty to the serious crime of witness tampering and agreed to serve eighty-four to one hundred and five months as a condition of his plea.[79] His crime involved a letter containing violent, vile threats against a cooperating witness and his girlfriend.[80] Mr.

8

Salley committed the crime just months after receiving his first kidney transplant.[81] He plead guilty with an agreed sentencing range with most of his present medical conditions and during the pandemic. We sentenced Mr. Salley within the agreed-upon range. Mr. Salley has served just over twenty percent of his prison sentence. The time presently served is insufficient to reflect the seriousness of the offense, promote respect for the law, provide just punishment, or adequately deter future criminal conduct on the part of Mr. Salley and others.[82] Mr. Salley's sentence of ninety months is still sufficient but not greater than necessary to accomplish the goals of sentencing.

### III.   Conclusion

We considered Mr. Salley's medical conditions at the time we sentenced him a few months ago.[83] We recommended he be placed at a medical facility, and the Bureau of Prisons placed Mr. Salley at FMC Devens. Mr. Salley receives treatment at FMC Devens and is also followed by an outside physician group for his kidneys.[84] His kidney doctor recommended he be reconsidered for a kidney transplant, and the FMC Devens medical team discussed this with him, noting Mr. Salley is interested.[85] His medical records from FMC Devens reflect his providers are beginning to perform tests for the kidney transplant screening.[86]

We are not unsympathetic to Mr. Salley considering his medical conditions and the current pandemic. We commend his remorse and willingness to work with the community in deterring further crime and understanding the rule of law. But the sentencing factors weigh heavily against modifying his sentence today. The Bureau of Prisons is affording him significant medical care at this federal medical center. Outside specialists are treating him. We cannot today find a sentencing policy furthered by releasing Mr. Salley at this time. We deny Mr.

Salley's motion for compassionate release because granting such relief would undermine the goals of the original sentence.

---

[1] ECF Doc. Nos. 31, 33, 36, 40, 69.

[2] ECF Doc. No. 80.

[3] *Id.* at 5–7.

[4] *Id.* at 6.

[5] *Id.*

[6] ECF Doc. No. 144 (Mr. Salley's counsel representing Mr. Salley "was in the Intensive Care Unit from December 1 to 14 of 2020"); ECF Doc. No. 145 at 3 n.1 (United States detailing information in presentence report indicating Mr. Salley "was hospitalized in the intensive care unit" following his COVID-19 diagnosis).

[7] ECF Doc. No. 132 at 2.

[8] *FMC Devens Inmate Admission & Orientation Handbook*, Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/dev/DEV_aohandbook.pdf at 1 (last visited Jan. 26, 2022).

[9] *FMC Devens*, Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/dev/ (last visited Jan. 26, 2022).

[10] *FMC Devens Inmate Admission & Orientation Handbook*, Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/dev/DEV_aohandbook.pdf at 31 (last visited Jan. 26, 2022).

[11] ECF Doc. Nos. 146, 150, 158.

[12] *See, e.g.*, ECF Doc. Nos. 146, 150, 158.

[13] ECF Doc. No. 150 at 85–109.

[14] *End-Stage Renal Disease (ESRD)*, 254490, Stedman's Medical Dictionary, (Westlaw, last updated Nov. 2014).

---

[15] *§ I22. Subsequent ST elevation (STEMI) and non-ST elevation (NSTEMI) myocardial infarction,* International Classification of Diseases, Tenth Revision, Clinical Modification, (Westlaw, last updated 2021); *Myocardial Infarction (MI)*, 443710, Stedman's Medical Dictionary, (Westlaw, last updated Nov. 2014).

[16] *Hypertension (HTN)*, 426220, Stedman's Medical Dictionary, (Westlaw, last updated Nov. 2014).

[17] *Cerebrovascular Accident (CVA)*, 4460, Stedman's Medical Dictionary, (Westlaw, last updated Nov. 2014).

[18] ECF Doc. No. 150 at 97.

[19] *Id.* at 85, 94.

[20] *See, e.g.*, ECF Doc. No. 146 at 41, 47. Mr. Salley reported an unwitnessed seizure on November 8, 2021. *Id.* at 47. He again reported seizures on November 23, 2021. *Id.* at 41. Nurse Practitioner Fandreyer and Dr. Khazen report Mr. Salley "says he has had 2 seizures in the past week. Per Patient, no one witnesses his seizures and he walks out of the exam room before finishing the conversation and describing the course of the seizures." *Id.*

[21] ECF Doc. No. 146 at 16.

[22] *Id.* at 12; *see also id.* at 181–190 (blood glucose readings).

[23] *Id.* at 12.

[24] ECF Doc. No. 158 at 2. Physician Assistant Makowicz further documents Mr. Salley "misses all AM doses of insulin and refuses many doses of sliding scale. He was educated that his goal HgbA1C is less than 7 and encouraged to improve his mediation compliance and diet to achieve this goal. He did not appear motivated, but will continue to educate and encourage good medication and diet compliance." *Id.* at 6.

[25] ECF Doc. No. 158 at 2.

[26] *Id.*

[27] *Id.* at 2–3.

[28] *Id.* at 2.

[29] *Id.* at 3.

---

[30] *See, e.g.*, ECF Doc. No. 146 at 50 (indicating creatine remains stable at 3.8 on 11/5/2021); 216 (indicating creatinine level is 4.19 on 12/29/2021); 234 (4.37 on 12/22/2021); 240 (4.34 on 12/15/2021); 261 (3.80 on 11/23/2021); 288 (3.80 on 11/2/2021).

[31] ECF Doc. No. 150 at 16 (Oct. 29, 2021 visit noting BMI).

[32] ECF Doc. No. 146 at 5 (12/21/2021 visit with BOP medical provider noting Mr. Salley to be screened for repeat kidney transplant and Mr. Salley noting he is interested); 363 (Dr. Pawar recommending Mr. Salley be reconsidered for kidney transplant on 11/19/2021). Mr. Salley is treated by Dr. Pawar of Beth Israel Deaconess Medical Center. Dr. Pawar saw Mr. Salley on November 19, 2021 and reported Mr. Salley's medical conditions as: end-stage renal disease presumed secondary to hypertension now status-post kidney transplant; "CKD 4" which we interpret to mean chronic kidney disease, stage 4, complicated by "acute cellular rejection"; type 2 diabetes mellutis; hypertension; hyperlipidemia; prior "CVA," which we interpret to mean cerebrovascular accident, with no residual effects; seizures; anxiety; sleep apnea; and a history of recreational drug use. *Id.* at 361–63. Dr. Pawar's assessment and plan concludes: "In summary, Mr. Salley is a 37-year-old male with end-stage renal disease previously on hemodialysis via right atrial venous fistula now s/p [status post] living related kidney transplant in March 2019 post transplant course complicated by episodes of cellular rejection 10/20, NSTEMI, now has ckd4 . . . At this point best way forward is to control hypertension and diabetes . . . I discussed with him that his kidney function is around CKD 4, so we will closely monitor and our aim is to keep it stable for as long as possible. He should also be reconsidered for transplant for which he will need a separate appointment at pre transplant clinic." *Id.* at 362–63. Dr. Pawar also reports he continues to take his immunosuppression medications. *Id.* at 363.

[33] ECF Doc. No. 146 at 5, 11 (discussing tests being ordered as part of work up for transplant); 12 ("Renal transplant: patient with failing transplant kidney. Seen by transplant team at BI on 11/19 who recommend consideration for repeat transplant. Initial work up started today.")

[34] ECF Doc. No. 150 at 108; ECF Doc. No. 135 at 3. Physician Assistant Makowicz reports the pharmacy had no record of his vaccination. Physician Assistant Makowicz reports Mr. Salley "has his vaccine card being mailed to the institution." ECF Doc. No. 150 at 108. Mr. Salley provides no medical support indicating he has been advised not to receive the vaccine. In fact, Dr. Pawar's note indicates he "should also get three vaccines with COVID." ECF Doc. No. 146 at 363.

[35] ECF Doc. No. 146 at 354 (declining vaccine but not selecting reason for declining).

[36] ECF Doc. No. 155 (report from Mr. Salley's fiancé indicating he tested positive for COVID this week).

[37] ECF Doc. No. 158 at 1.

[38] *Id.*

12

---

[39] *Id.* at 2.

[40] *Id.* at 1.

[41] *FMC Devens*, Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/dev/ (last visited Jan. 27, 2022).

[42] *COVID-19 Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Jan. 27, 2022).

[43] *Id.*

[44] *Id.*

[45] *FMC Devens*, Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/dev/ (last visited Jan. 27, 2022); *BOP COVID-19 Operational Levels*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (explaining modified operation levels) (last visited Jan. 24, 2022).

[46] ECF Doc. No. 135.

[47] ECF Doc. Nos. 135, 153. Mr. Salley moved his fiancé to Massachusetts after a dead "mutilated" rat was placed on the front seat of her car. ECF Doc. No. 153 at 2. She purportedly does not know anyone in Massachusetts and will be alone when she has their child. *Id.*

[48] ECF Doc. No. 144.

[49] ECF Doc. No. 159.

[50] ECF Doc. No. 145.

[51] ECF Doc. Nos. 137, 143, 155.

[52] The United States does not dispute Mr. Salley exhausted his administrative remedies to seek compassionate release. ECF Doc. No. 145. Mr. Salley immediately filed a request for modification of his incarceration with the Warden at FMC Devens upon surrendering. ECF Doc. Nos. 144 at 4, 145 at 4. The parties disagree whether the Warden denied the request or did not answer within 30 days. *See, e.g.* ECF Doc. Nos. 135 at 1 (Petitioner indicating he did not receive a response from the Warden), 144 at 3 (same in supplemental brief filed by counsel), 145 at 4 (United States indicating the Warden denied the request). But the United States contends Mr. Salley has not exhausted his administrative remedies within the prison to raise his concerns about the medical treatment he is receiving for his seizure disorder and kidney disease or to challenge his conditions of confinement, which Mr. Salley contends are Eighth Amendment violations. *Id.* at 13 n.5.

---

[53] 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Andrews*, 12 F.4th 255, 258 (3d Cir. 2021) ("[A] a prisoner's motion may be granted if the court finds that the sentence reduction is (1) warranted by 'extraordinary and compelling reasons'; (2) 'consistent with applicable policy statements issued by the Sentencing Commission'; and (3) supported by the traditional sentencing factors under 18 U.S.C. § 3553(a), to the extent they are applicable.") (further citation omitted).

[54] *Andrews*, 12 F.4th at 259–60.

[55] 18 U.S.C. § 3582(c)(1)(A)(i).

[56] *United States v. Smith*, No. 9-187, 2020 WL 4047485, at *2 (W.D. Pa. July 20, 2020).

[57] Mr. Salley argues three grounds for extraordinary and compelling reasons for a sentence modification. Because we find this prong satisfied based on Mr. Salley's medical conditions and the current pandemic, we do not substantively address the other grounds.

[58] ECF Doc. No. 135 at 1.

[59] *Id.* at 2–5.

[60] ECF Doc. No. 153 at 2.

[61] ECF Doc. No. 144 at 6–14.

[62] ECF Doc. No. 145.

[63] *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). We note the basis of Mr. Salley's counsel's argument regarding the COVID-19 pandemic cites no recent sources or cases—all sources relating to the pandemic and its impact on jails stem from 2020. While the pandemic rages on, much has changed since the articles counsel last visited in 2020.

[64] *See, e.g. United States v. Riddick*, No. 95-CR-73-1, 2022 WL 138074, at *3–4 (E.D. Pa. Jan. 14, 2022) (Chief Judge Sanchez discussing ongoing pandemic in compassionate release analysis and considering vaccine effectiveness in light of Omicron in finding no extraordinary and compelling reasons to grant compassionate release).

[65] *Andrews*, 12 F.4th at 260 (discussing the policy statement found at U.S. Sent'g Guidelines Manual § 1B1.13 cmt. n.1.)

[66] *Id.*

---

[67] The Sentencing Commission instructs extraordinary and compelling reasons exists when "[t]he defendant is suffering from a terminal illness (i.e., a serious and advanced illness with end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specified time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), **end-stage organ disease**, and advanced dementia." Sent'g Guidelines Manual § 1B1.13 cmt. n.1 (emphasis added). Judges routinely find "end-stage renal disease" qualifies as end-stage organ disease in the Sentencing Guidelines policy statement. *See United States v. Iezzi*, No. 17-157, 2021 WL 5832767, at *5 (W.D. Pa. Dec. 9, 2021) ("As previously noted, many courts have found that end-stage kidney failure rises to the 'extraordinary and compelling' level because it falls into the category of 'end-stage organ disease' which is enumerated in the Application Note."); *United States v. Hickson*, No.13-24, 2021 WL 1687317, at *4 (M.D. Ga. Apr. 29, 2021), *report and recommendation adopted*, No. 13-24, 2021 WL 2697535 (M.D. Ga. June 30, 2021) (collecting cases and finding end-stage renal disease qualifies as "end-stage organ disease"); *United States v. Holloway*, No. 09-CR-30, 2021 WL 4710819, at *3 (W.D. Va. Oct. 8, 2021); *but see United States v. Medeiros*, No. 19-137, 2021 WL 2636012, at *4–6 (D. Haw. June 25, 2021) (finding no extraordinary and compelling circumstances when petitioner had stage 5 chronic kidney disease and various other ailments but effectively managed his kidney disease with dialysis).

[68] *People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 25, 2022) (listing the following conditions: cancer; chronic kidney disease; chronic liver disease; chronic lung disease; dementia or other neurological conditions; diabetes type 1 or 2; down syndrome; heart conditions, such as hypertension; HIV; being in an immunocompromised state; obesity; sickle cell disease; smoking; solid organ or blood stem cell transplant; stroke or cerebrovascular disease; substance use disorders; and, tuberculosis).

[69] Judges differ in whether being vaccinated precludes a finding of extraordinary and compelling reasons for release. *Compare United States v. Mansfield*, No. 17-00205, 2022 WL 44987, at *2 (D.S.C. Jan. 5, 2022) ("Because [petitioner] has a diminished risk of severe illness, hospitalization, or death from COVID-19 due to his vaccination status, the court does not find that the COVID-19 pandemic presents an extraordinary and compelling reason for a sentence reduction."); *United States v. Farmer*, No. 19-427, 2022 WL 47517, at *4 (S.D.N.Y. Jan. 5, 2022) ("In sum, as a result of [petitioner's] vaccination, he now has significant protection against serious illness due to COVID-19, and his obesity does not qualify as an 'extraordinary and compelling reason' to grant his motion for compassionate release."); *United States v. Reed*, No. 18-0078, 2021 WL 2681498, at *4 (E.D. Pa. June 30, 2021) ("Now that COVID-19 vaccinations are being administered throughout the Bureau of Prisons, compassionate release motions generally lack merit."); *with United States v. Brunetti,* No. 01-257, 2022 WL 92753, at *5 (S.D.N.Y. Jan. 10, 2022) ("While the majority of vaccinated individuals infected with the Omicron variant will only experience minor symptoms, 'breakthrough' infections can still cause severe, possibly life-threatening illness in individuals who suffer from medical conditions that render them particularly vulnerable to the virus . . . 'For that reason, some courts have continued to find the risk of COVID-19 germane to their analysis of extraordinary and compelling

circumstances, even whe[n] ... the defendant is vaccinated.'") (further citation omitted); *United States v. Ihejiere*, No. 19-077, 2021 WL 4122583, at *3 (D.N.H. Sept. 9, 2021) (finding extraordinary and compelling circumstances even though petitioner fully vaccinated when had kidney transplant and took immunosuppressant medications putting petitioner at high risk for severe case of COVID-19); *United States v. Sandoval*, No. 14-5105, 2021 WL 673566, at *4–5 (W.D. Wash. Feb. 22, 2021) (finding extraordinary and compelling reasons even though petitioner had one dose of a vaccine and previously had COVID-19).

[70] *See, e.g.*, *United States v. Church,* No. 21-1840, 2021 WL 5632062, at *2 (3d Cir. Dec. 1, 2021) ("We agree that Church's 'unexplained refusal to accept a COVID-19 vaccination when offered negates [his] otherwise compelling medical reasons for release.'"); *United States v. Graham*, No. 09-602, 2021 WL 3728337, at *3 (E.D. Pa. Aug. 23, 2021); *United States v. Ortiz*, No. 18-264, 2021 WL 1422816, at *3–4 (E.D. Pa. Apr. 15, 2021) (collecting cases).

[71] *See, e.g.*, *United States v. Estrada,* No. 07-2233, 2021 WL 5711819, at *3 (D. Minn. Dec. 2, 2021).

[72] *Hickson*, No.13-24, 2021 WL 1687317, at *4; *Holloway*, 2021 WL 4710819, at *3; *Iezzi*, 2021 WL 5832767, at *6; *Ihejiere*, 2021 WL 4122583, at *3; *United States v. Jones*, No. 17-47, 2020 WL 5709281, at *3 (M.D. Pa. Sept. 24, 2020).

[73] ECF Doc. No. 135 at 4.

[74] ECF Doc. No. 144 at 14–16.

[75] We have no authority to release Mr. Salley to home confinement. *United States v. Dennison*, No. 09-402, 2021 WL 5630296, at *4 (D.N.J. Dec. 1, 2021); *United States v. Milchin*, No. 17-00284, 2022 WL 196279, at *1 n.1 (E.D. Pa. Jan. 21, 2022).

[76] ECF Doc. No. 145 at 13–16.

[77] 18 U.S.C. § 3582(c)(1)(A)(i).

[78] *Iezzi*, 2021 WL 5832767, at *6 (further citations omitted).

[79] ECF Doc. No. 119 at 1.

[80] Mr. Salley also has a lengthy criminal history with crimes dating back to 2000. He received a criminal history score of nine, placing his criminal history in category IV at the time of sentencing. He also has a history of admitted drug abuse evidenced by his medical records.

[81] ECF Doc. Nos. 9 (indictment); 119 (plea agreement); 150 at 108 (noting his kidney transplant occurred March 2019).

---

[82] 18 U.S.C. § 3553(a)(2)(A)-(D); *United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020) ("Because a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing, the time remaining in that sentence may—along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates—inform whether immediate release would be consistent with those factors.").

[83] *Iezzi*, 2021 WL 5832767, at *7.

[84] *See, e.g.*, ECF Doc. Nos. 146, 150.

[85] ECF Doc. No. 146 at 5.

[86] *Id.* at 11 (discussing tests being ordered as part of work up for kidney transplant), 12 ("Renal transplant: patient with failing transplant kidney. Seen by transplant team at BI on 11/19 who recommend consideration for repeat transplant. Initial work up started today.").